IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SCOTT STEELE,

                Plaintiff,

v.

KILOLO KIJAKAZI[1],
Acting Commissioner of Social Security,

                Defendant.

OPINION AND ORDER

20-cv-987-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Scott Steele appeals a decision of the Acting Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income under the Social Security Act. Plaintiff contends that the judge who denied his claim at the hearing level erred by: (1) failing to adequately explain the basis for adopting certain upper extremity limitations; (2) offering only a perfunctory analysis of the medical opinions; and (3) failing to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles. Although I agree with plaintiff that the ALJ offered only thin evidentiary support for some of his findings regarding plaintiff's abilities, his rationale is plain enough, and his findings supported by substantial evidence. Moreover, I find no "conflict" between the vocational expert's testimony and the Dictionary of Occupational Titles. Accordingly, I will affirm the decision.

---

[1]The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

1

The following facts are drawn from the Administrative Record ("AR"), dkt. #12, filed with the acting commissioner's answer.

BACKGROUND

In November 2018, plaintiff Scott Steele applied for disability insurance benefits and supplemental security income under the Social Security Act, alleging that he had been disabled since January 10, 2017, because of numerous impairments, including osteoarthritis, neck pain, chronic pain, and a torn left rotator cuff. AR 70. Plaintiff, a former painter with some college education, was 47 years old on his alleged disability onset date.

Plaintiff has a history of chronic, widespread pain, which is most severe in his head and neck. Imaging of his cervical spine shows severe multi-level degenerative disk disease in his cervical spine with related arm pain, neck pain, and headaches. For pain relief, plaintiff has tried physical therapy, various medications, an occipital nerve block and epidural steroid injections, all without success. He also has a past history of tennis elbow on the left, as well as mild carpal tunnel in both wrists. His tennis elbow was treated with occupational therapy in October 2017, and improved but still flared when he took painting jobs. None of plaintiff's treating medical providers or therapists issued any permanent restrictions or otherwise offered an opinion on his limitations or ability to work.

After plaintiff applied for disability benefits, the local disability agency asked one of its physicians, state agency physician William Fowler, M.D., to review plaintiff's medical record and report his functional limitations. In a March 29, 2019 opinion, Dr. Fowler

determined that plaintiff had no limitations in his lower extremities but was limited to light work (lifting up to 20 pounds occasionally and 10 pounds frequently) based on his history of significant pain and degenerative disk disease in his neck. AR 74-77. Other than the weight restrictions, Dr. Fowler did not find any additional manipulative limitations or limits on reaching. On reconsideration, another state agency physician, Dr. Pat Chan, issued an opinion on July 23, 2019, in which he affirmed Dr. Fowler's findings. AR 101-102.

After plaintiff's application was twice denied by the local disability agency, plaintiff requested an administrative hearing, which was held on June 25, 2020. Plaintiff testified at the hearing, represented by an attorney. Also testifying was an impartial vocational expert. Plaintiff said that he could not work full time because of shooting pain, weakness, and tingling in his left leg and arms, a past history of a torn rotator cuff, and, most recently, incapacitating neck pain and headaches brought on if he "move[d] [his] head one way or other or tr[ied] to bend or look up." AR 55. Plaintiff said the pain prevented him from sleeping much at night or being active for as much as 15 to 20 minutes during the day before his pain brought on the need to rest or try to sleep. Plaintiff further said he could not sit for long before his legs went numb. AR 56. Plaintiff estimated he could sit for 10 minutes at a time, could not stand still for any length of time, and could lift at most 10 to 15 pounds occasionally. Because of his neck and shoulder pain, he could not reach overhead. He said he could reach in front of him for a "light thing" such as papers or a dish, but he had numbness in his hands that sometimes caused him to drop items. Plaintiff said that on his

"best days," he could move around to do dishes and laundry for up to half an hour before lying down for an hour or two.  AR 57-58.

On July 15, 2020, the ALJ issued a decision, finding plaintiff not disabled under the five-step inquiry for evaluating disability claims, 20 C.F.R. §§ 404.1520, 416.920.  The ALJ found that plaintiff had the following impairments that imposed more than minimal limitations on his ability to work and were therefore severe:  degenerative disc disease of the cervical spine with radiculopathy; cervicogenic headache; degenerative disc disease of the thoracic spine; coronary artery disease; left lateral epicondylitis; chronic pain syndrome; myofascial muscle pain; and anxiety disorder.  AR 36.  The ALJ then determined that, whether these impairments were considered singly or in combination, none of them met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  AR 36-37.

Proceeding with the inquiry, the ALJ then found that plaintiff retained the residual functional capacity to perform light work, as the state agency physicians had found, but with these additional limitations:

> no climbing of ladders, ropes and scaffolds.  He can occasionally climb stairs and ramps.  The claimant can frequently stoop, crouch, balance, kneel and crawl.  The claimant can perform no overhead reaching with the left arm, he can frequently reach in all other directions, handle and finger with the left hand.  The claimant can remember and carry out simple instructions and tasks.  He cannot perform work at a production rate pace such as assembly line work.  the claimant can tolerate frequent interactions with supervisors and coworkers and occasional interaction with the general public.

AR 38.

The ALJ stated that he had reviewed the state agency physicians' opinions and found them "persuasive," explaining that their opinions that plaintiff could meet the sitting, standing, walking and lifting requirements of light work were "supported by their own internal analysis" and consistent with the medical evidence as a whole. AR 40. Specifically, the ALJ noted that plaintiff's examination findings were "often normal," showing him to have a normal gait, intact sensation, and uniform strength. AR 40. The ALJ further found that the medical evidence, clinical examination findings, and plaintiff's daily activities failed to corroborate his allegations concerning the intensity, persistence, and limiting effects of his alleged symptoms. The ALJ noted that plaintiff's activities included living with family, doing dishes and laundry, shopping, taking care of his daughter, preparing meals, driving, using public transportation, shopping in stores, handling finances, visiting friends, visiting his mother and attending school events. Id. However, the ALJ did not specifically identify what evidence he relied upon as a basis for including additional postural and reaching limitations beyond those found by the state agency physicians.

Relying on the vocational expert's response to a hypothetical incorporating the limitations set out above, the ALJ found that a person of plaintiff's age, education, and past work history who had such limitations would not be able to perform plaintiff's past work as a painter, but would be able to make a vocational adjustment to other jobs existing in significant numbers in the national economy, including light assembly, folder, and inspector. Accordingly, because there were jobs existing in significant numbers that plaintiff could perform, the ALJ found plaintiff not disabled at the fifth step of the sequential evaluation.

The Appeals Council subsequently denied plaintiff's request for review, making the ALJ's decision the final decision of the acting commissioner.

OPINION

Plaintiff's challenges to the ALJ's decision focus on the ALJ's assessment of his residual functional capacity ("RFC"). This court must affirm the ALJ's RFC determination so long as it is supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014). In reviewing an ALJ's decision, the court applies a common-sense reading and considers the opinion as a whole. Winsted v. Berryhill, 923 F.3d 472, 478 (7th Cir. 2019).

A. Limitations on Reaching

Plaintiff argues that the ALJ committed legal error by failing to build the required "logical bridge" between the evidence and his finding that plaintiff was limited to frequent reaching, handling, and fingering with his left arm and hand. Plaintiff adds that the ALJ was required to explain why he found that plaintiff was limited to using his left arm for reaching "frequently," that is, one-third to two-thirds of the time, see SSR 83-10 (defining "frequent"), as opposed to some other fraction of the workday. Although plaintiff

acknowledges the absence of any medical opinions in the record supporting greater limitations, he nevertheless suggests that the ALJ overstepped his bounds and "played doctor" by assessing medical limitations that he was not qualified to evaluate.

Plaintiff's challenge to the ALJ's reaching limitation is not persuasive. An ALJ does not "play doctor" any time he adopts limitations not specifically identified by any physician. It is well-settled that an ALJ's conclusions need not match any physician's opinions. Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007). Although an ALJ may cross the line if he attempts to interpret medical tests or findings, an ALJ can "consider medical records without the assistance of an expert when the records do not require medical expertise to interpret." Dingman v. Saul, No. 19-CV-1056-BBC, 2020 WL 5302267, at *5 (W.D. Wis. Sept. 4, 2020) (quoting Salvino v. Saul, No. 19-cv-422-JDP, 2020 WL 467902, at *2 (W.D. Wis. Jan. 29, 2020)). Plaintiff does not contend that the ALJ attempted to interpret any test results or medical records in assessing his RFC, so he has not made a persuasive case that the ALJ "played doctor." Moreover, "the rule about playing doctor is generally applied when the ALJ rejects a medical opinion in favor of more expansive view of the claimant's abilities." Luzar v. Saul, No. 19-CV-1018-JDP, 2020 WL 5249225, at *3 (W.D. Wis. Sept. 3, 2020) (citing Gibbons v. Saul, 801 F. App'x 411, 417 (7th Cir. 2020); Meuser v. Colvin, 838 F.3d 905, 911 (7th Cir. 2016). In this case, the ALJ adopted an RFC that was *less* expansive than any medical opinion, so there was no prejudice to plaintiff. Gedatus v. Saul, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is that [plaintiff] offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set.").

The only evidence plaintiff cites that arguably supports greater restrictions on reaching than the ALJ found, is his own testimony that he has weakness and tingling in his extremities, "problems" with his shoulder, cannot hold "any" weight out in front or to his side, and "sometimes" dropped things. As the ALJ reasonably noted, however, plaintiff was able to engage in a number of daily activities requiring use of his hands and arms, including laundry, cooking, doing dishes, shopping, and driving. Further, plaintiff acknowledged at the hearing that he could reach for a light object such as a dish. Giving the ALJ's decision the deference it is due, I cannot say that no reasonable mind would agree with the manner in which the ALJ reconciled the conflicting evidence. In particular, none of this testimony *compels* a finding that plaintiff cannot perform reaching and handling up to two-thirds of the time with his left arm and hand, but no overhead reaching on the left, given his history of a torn rotator cuff and tennis elbow. Delong v. Saul, 844 F. App'x 894, 900 (7th Cir. 2021) ("But even if the record could support such limitations, there is nothing that compels them."). Stated differently, remand is not required merely because it is arguable that the record could support greater limitations than the ALJ found. Because that is all that plaintiff has shown, I must affirm the acting commissioner's decision.

## B. Analysis of Medical Opinions

As noted above, the only medical opinions before the ALJ were those from agency physicians Drs. Fowler and Chan. Because plaintiff's claim was filed after March 27, 2017, the ALJ was required to consider these opinions in accordance with the commissioner's new

8

rules for considering medical opinions, set forth at 20 C.F.R. § 404.1520c. Under these rules, the opinions of state agency physicians are considered "prior administrative medical findings" that the ALJ must consider, along with any other medical opinions, with no opinion entitled to any deference or specific evidentiary weight. Id. As under the prior rules, the ALJ is to consider a number of factors in evaluating each opinion's persuasiveness, including supportability, consistency, the provider's speciality and relationship with the claimant, with supportability and consistency being the most important. Id. 20 C.F.R. § 404.1520c(b). Finally, although ALJs must discuss in their decisions how persuasive they find the various medical opinions and prior administrative medical findings, they need only explain how they considered the supportability and consistency factors; discussion of the other factors is optional except when two medical opinions are otherwise equally persuasive. Id.

In his decision, the ALJ wrote that the opinions from the state agency physicians were persuasive, explaining:

> Their opinion is supported by their own internal analysis. In addition, it is consistent with the medical evidence and the record as a whole. For example, examination findings were often normal. Specifically, the claimant had normal cardiovascular examination, a normal gait, intact sensation and uniform strength.

AR 40. Plaintiff argues that this discussion was too perfunctory to comply with the new regulation's articulation requirement. Insofar as plaintiff appears to be arguing that the ALJ committed an error of law, I disagree. The regulation says nothing about how detailed the ALJ's discussion must be, much less suggest that it must resemble a "comparison and

contrast term paper," as plaintiff argues in his brief. It says only that the ALJ "will explain how we considered the supportability and consistency factors," which the ALJ plainly did here. Accord Steward v. Bowen, 858 F.2d 1295, 1299 (7th Cir. 1988) (ALJ need only "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.").

Moreover, plaintiff has failed to show how he was harmed by the ALJ's brevity. Plaintiff argues broadly that the agency physicians failed to consider his chronic pain syndrome and the "objective medical evidence," but he does not identify any doctor's opinion or specific medical evidence that would have supported greater restrictions than the ALJ found. Moreover, the ALJ assigned plaintiff an RFC that was *more* restrictive than either Dr. Fowler or Dr. Chan found, concluding that plaintiff could perform no overhead reaching on the left and a number of additional reaching and postural restrictions. The only evidence arguably supporting still greater restrictions was plaintiff's testimony, but as noted above, the ALJ reasonably determined that plaintiff was not limited to the extent he alleged, given his ability to use his hands for a variety of daily activities.

Accordingly, although the ALJ's decision is somewhat perfunctory, and even though there is some evidence that could be construed as favorable to plaintiff, the ALJ did not ignore evidence contrary to his conclusion. Instead, he "sided with [plaintiff] to a degree" by finding plaintiff had severe impairments and needed some limitations in addition to those found by the state agency physicians. Gedatus, 994 F.3d at 901.

On judicial review, the question is not whether the ALJ could have written a better opinion, but rather whether substantial evidence supports the ALJ's conclusion about plaintiff's limitations. Because I am satisfied that the standard is met in this case, there is no reason to remand just so the ALJ can write a better decision.

### C.  Challenge to Vocational Expert's Testimony

Under Social Security Ruling 00-4p, an ALJ is required to investigate and resolve apparent conflicts between a vocational expert's testimony concerning a particular job's requirements and the description of those requirements as set forth in the Dictionary of Occupational Titles, or DOT. If the ALJ fails to do so, and a plaintiff establishes the existence of an apparent conflict with respect to the jobs on which the ALJ relies for his step five determination, remand is often required to resolve the inconsistency. In this case, plaintiff argues that such an "unresolved conflict" exists because the vocational expert acknowledged that some of the ALJ's hypothetical job limitations – namely, limitations on reaching with only one arm, interactions with others and production rate pace – were not addressed by the DOT's job descriptions. In other words, plaintiff takes the position that the DOT's silence on a restriction has the same significance as a conflict between the DOT and a restriction.

As the acting commissioner points out, however, the Court of Appeals for the Seventh Circuit and courts in this district have routinely rejected this argument. See, e.g., Collins v. Berryhill, 743 F. App'x 21, 26 (7th Cir. 2018), cert. denied, –– U.S. ––, 139 S. Ct.

1209(2019)("Because the DOT does not specify whether jobs allow changing from sitting to standing, the VE's testimony supplemented the DOT and did not conflict with it."); Brown v. Colvin, 845 F. 3d 247, 254 (7th Cir. 2016) ("Brown concedes that [the VE's testimony about sit-stand options and allowable time off task] merely supplemented (and did not conflict with) the Dictionary of Occupational Titles (DOT), which means that she forfeited these arguments by failing to object to the testimony during the administrative hearing."); Zblewski v. Astrue, 302 F. App'x 488, 494 (7th Cir. 2008) (because DOT does not address the subject of sit-stand options, there was no apparent conflict between VE's testimony and the DOT); Frye v. Saul, No. 18-CV-550-WMC, 2020 WL 255815, at *5–6 (W.D. Wis. Jan. 17, 2020) (relying on Brown and Zblewski to hold that there is no apparent conflict when the expert's testimony supplements the information in the Dictionary); Luzar v. Saul, No. 19-CV-1018-JDP, 2020 WL 5249225, at *4 (W.D. Wis. Sept. 3, 2020) (agreeing with Frye); Arms v. Berryhill, No. 18-CV-476-JDP, 2019 WL 12352809, at *4-5 (W.D. Wis. Mar. 26, 2019) ("Arms contends that the DOT's silence on a restriction is the same as a conflict between the DOT and a restriction. But that interpretation drains the word 'conflict' of all meaning."). On reply, plaintiff argues that these cases are in conflict with the plain language of SSR 00-4p, but he misreads the regulation. As explained in Luzar, at *5, "SSR 00-4p confirms rather than contradicts the view in Frye that there is no apparent conflict between the Dictionary and testimony that addresses issues not included in the Dictionary." Stated simply, there is no merit to plaintiff's argument that a vocational

expert's testimony "conflicts" with the DOT when the expert addresses job requirements on which the DOT is silent.

As a final matter, I note that although plaintiff's counsel in this case represented the plaintiffs in Frye, Luzar, and Arms, he did not cite any of these authorities in his opening brief, even though they were decided before he filed his brief in this case. Instead, counsel addressed the cases in his reply, and only after the acting commissioner cited them in the opposition brief. This is not a new page in counsel's book. He took the same approach in Luzar, prompting a warning from Judge Peterson that future failures by counsel to acknowledge adverse legal authority up front could lead to sanctions. Luzar, at *5. Plaintiff's counsel is hereby notified that the rules of Judge Peterson's court will apply in this court in the future as well, namely:

> The court expects counsel to acknowledge when the court has already decided an issue against him. Of course, he is free to contend that the previous decision was wrongly decided, but he must address precedent head on rather than simply ignore it. If he fails to do so, the court will consider an appropriate sanction.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff's applications for disability insurance benefits and supplemental security income is AFFIRMED.

Entered this 13th day of December, 2021.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge